[No. 3523.  Decided April 20, 1901.]

ALLEN MILLER, *Respondent,* v. J. H. DUMON, *Appellant.*

APPEAL — SUFFICIENCY OF EVIDENCE.

Where the evidence is contradictory, but there is substantial testimony supporting the verdict of the jury, the verdict will not be disturbed on appeal, even though the court may believe that the weight of the testimony is against it.

EVIDENCE — OPINIONS OF EXPERT.

Where a witness has qualified as a physician and surgeon, familiar with fractures and with the X-ray process of determining the existence of a fracture, he is competent to testify as to his opinion as to an alleged fracture of plaintiff's leg, based upon an X-ray negative of the injured limb taken by himself.

SAME — X-RAY PHOTOGRAPHS.

An X-ray photograph is admissible in evidence, when verified by proof that it is a true representation of an object which is the subject of inquiry.

MISCONDUCT OF JUDGE — COMMENT ON FACTS.

A remark by the judge that every doctor examined seemed to locate the external capsular ligament in a different place, and he would like to see in a surgical work, just where that ligament is, and would like an exact description of it, does not fall within the prohibition of art. 4, § 16, of the constitution against commenting on the facts, since the remark amounts to nothing more than an expression of the judge's inability to un-

derstand, from the description given by the medical witnesses, the exact location of that ligament, made with the object of calling the attention of counsel to the difficulty felt by him, so as to have the matter made clearer to judge and jury.

INSTRUCTIONS — INTERPRETATION AS A WHOLE — HARMLESS ERROR.

Although an instruction, standing alone, may have had a tendency to mislead the jury, yet it would not constitute prejudicial error, when it is apparent, from the instructions as a whole, and in the light of their verdict, that the jury could not have been misled.

SAME — REFUSAL OF REQUESTED INSTRUCTION.

The refusal to give a requested instruction upon defendant's theory of the case is not prejudicial error, when that point is sufficiently covered by the instructions given by the court.

NEW TRIAL — REFUSAL WHEN JUDGE DOUBTS VERDICT — DISCRETION OF COURT.

A mere doubt as to the correctness of a verdict, expressed by the judge at the hearing of a motion for a new trial, is not ground for reversal by an appellate court of his action in refusing to grant the new trial.

Appeal from Superior Court, Lewis County.—Hon. HENRY S. ELLIOTT, Judge. Affirmed

*A. E. Rice, George Dysart* and *M. A. Langhorne,* for appellant.

*J. B. Landrum* and *Reynolds & Stewart,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The respondent brought this action against the appellant, who is a physician and surgeon, to recover for injuries alleged to have been caused him by the appellant's negligent treatment of an injury from which he was suffering. The undisputed evidence shows that the respondent met with an accident early in July, 1896, which a Dr. Francis, who was employed by respondent to attend him, pronounced a fracture of the tibia of the left leg; that Dr. Francis treated the injured limb as for

a fracture until some ten or twelve days later, when the appellant was called in to examine the injury; that the appellant responded to the call, made an examination of the injury, and told the respondent that there was no fracture of the bones of the leg, but that he was suffering from a severe sprain. As to what further occurred during this visit there is a square contradiction in the evidence. The respondent's testimony is to the effect that the appellant undertook to treat the injury, stating that the treatment prescribed by Dr. Francis was improper, and liable to result in a permanent stiffening of the knee joint; that he unwound the bandages from around the limb which had been put on by Dr. Francis, removed the splint in which it was encased, and directed the respondent to get up and put on his clothes, assisting him in so doing; that he directed him further to get a pair of crutches, and come over to his office, when he would put a rubber bandage on the knee. The appellant denies that he undertook to treat the injury. While he admits that he examined the leg at the respondent's request, and expressed the opinion that no bones were fractured, he testifies that there were no bandages on the leg when he examined it; that he said nothing concerning the treatment prescribed by Dr. Francis, gave no advice as to its proper treatment, but told the respondent to continue under the treatment of Dr. Francis; telling him also that he would not undertake the case, and giving at the same time his reasons for refusing. It is undisputed, however, that as a result of this visit the respondent sent a note to Dr. Francis telling him he did not require his services longer; that he did get out of bed, and put on his clothes, did procure a pair of crutches, and undertake to use the injured limb, and that while so doing the leg gave way in some manner, causing the appellant much pain and suffering, and compelling

him to retake to his bed. The appellant also testifies that on retaking to his bed he sent for the appellant, who for some reason, did not answer the call; that he then sent for Dr. Francis, who treated the case until treatment was no longer beneficial. The final result of the whole matter was a permanent injury to respondent's leg. Other matters of evidence material to be considered will be stated further on. The trial resulted in a verdict and judgment for the respondent.

The court charged the jury that under the issues as made by the pleadings there could be no recovery on the part of the respondent unless the jury should find from the evidence that the respondent's leg was in fact broken. The appellant urges that this instruction, whether right or wrong, became the law of the case, which the jury were bound to obey, and that the overwhelming weight of the evidence was to the effect that the leg had not been broken. We are asked to reverse the case and grant a new trial on this ground. On this question it may be that the weight of the professional testimony was to the effect that there had been no fracture of the bones of the injured limb, but the evidence was contradictory. There was substantial testimony the other way, sufficient of itself to support the verdict of the jury. In such a case, as we have repeatedly held, it is not within the province of this court to overrule the verdict, but it must stand, even though we may believe that the weight of the testimony is against it. *Pronger v. Old National Bank,* 20 Wash. 618 (56 Pac. 391), and cases there cited.

In the progress of the trial one Dr. Kibbe was examined as a witness, and was permitted, over the appellant's objection, to exhibit to the jury an X-ray negative taken by himself of the respondent's injured limb, and to testify that, in his opinion, based upon his examination made in

this manner, the tibia of the leg had been fractured at a place a little below the knee joint. The negative was also permitted to go to the jury. The appellant assigns error on the ruling of the court permitting the witness to testify as to his opinion, and permitting the negative to be introduced in evidence. It is argued that the witness, instead of being permitted to express the opinion that the bone of the leg had been fractured, should have been confined to explaining what appearances upon the negative indicated a fracture, and leave it for the jury to determine from the negative whether these appearances were there or not. But counsel, it would seem, have overlooked the fact that the witness qualified as a physician and surgeon, not only familiar with fractures, but with the X-ray process of determining whether a fracture had ever existed. As an expert he was as much qualified to express his opinion from an examination made in this way as were the experts called by the appellant, who made their examinations by means more commonly used by the medical profession. The method of examination did not affect the competency of his testimony. How much it affected its weight was entirely a question for the jury. Nor do we think the introduction of the negative itself was objectionable. The process by which it was obtained was fully explained to the court. It was shown to be taken by an approved process and an approved apparatus, and the witness testified that it was a correct representation of the condition of the bones of the leg. Photographs taken by the common processes are generally held admissible as evidence, and there would seem to be no reason for making a distinction between an X-ray and a common photograph; that is, either is admissible as evidence when verified by proof that it is a true representation of an object which is the subject of inquiry. For cases directly in point, see

*Bruce v. Beall,* 99 Tenn. 303 (41 S. W. 445); *De Forge v. New York, N. H. & H. R. R.,* 59 N. E. 669.

The record shows the following:

"Q. Will you just define that external capsular ligament?

A. The external capsular ligament extends from the rough surface of the outer part of the condyle of the femur and this ridge which you see (indicating on identification 1) around the upper part of the tibia. The ligament extends all around.

The Court: It seems to me every doctor has located that in a different place. I would like to see, in a surgical work, just where that ligament is; and I think the jury would like to see. I do not want to introduce surgical works myself, if counsel do not want them, but I would like to have an exact description of this.

Q. Since that point has been made prominent, I will ask you, doctor, to state now whether that capsular ligament there surrounds the entire knee?

A. Surrounds the entire knee joint; yes, sir." (Then follows a minute description by the witness of the location and the uses of the capsular ligament.)

This remark of the judge is objected to as being a comment on the facts, and as being thus within the prohibition of § 16, art. 4, of the state constitution. While the judge's language might have been more happy, the remark, it seems to us, was nothing more than an expression of his inability to understand, from the description given by the medical witnesses, the exact location of the particular ligament inquired of, and his fear that the jury were being no better enlightened. His object was simply to call the attention of counsel to the difficulty felt by him, and to enable them to make the matter clear. Such an observation is not a comment on the facts. But even if we mistake in this, it cannot be that every remark that the judge may make during the progress of the trial touching the evidence is such a comment as will work a reversal, no mat-

ter which party may assign it as error. It must be such a comment as will operate to the prejudice of the complaining party before it falls within the constitutional inhibition. The rule is that error, to work reversal, must be prejudical; and in the matter complained of here we see nothing that could in any way have prejudiced the appellant's case.

The court gave to the jury the following instruction:

"If you find, under the evidence, that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages which, in your judgment, he should recover under the evidence in the case. In estimating this amount you may take into consideration the loss of time occasioned by the immediate effect of the injury complained. of. You may further take into consideration the physical and mental suffering occasioned by the injury. In addition you may consider the occupation of the plaintiff, and his ability to earn money; and he will be entitled to recover for any permanent reduction in his power to earn money by reason of his injuries. The amounts of these several elements of damages, if any you find, are entirely within your province, having due regard to the obligation of your oath and the duty of reasonable action on your part under that oath. You will, however, bear in mind, gentlemen, that, whatever you may find on the question of damages, you can give no damages for any loss of time or pain or suffering of the plaintiff prior to the time the plaintiff was attended by the defendant, if you find he was so attended. The damages, if any you find, cannot, in all, exceed the sum of seven thousand dollars."

It is urged against this that it is not sufficiently explicit; that, while it may be a correct statement of the law, it was liable to be misunderstood by the jury; that the phrase "injuries complained of" is broad enough to include all of the injuries received by the respondent,—not only those caused by the act of the appellant, but the original injury, for which the appellant is not responsible.

Standing alone, the instruction might be subject to the criticism put upon it, but in a previous instruction the court had defined to the jury the injuries for which the appellant was liable, if liable at all. He had instructed them that the injuries complained of were the "unskillful and negligent treatment" of respondent by the appellant. It would hardly seem, from the instructions as a whole, that the jury could have been misled, nor does their very moderate verdict so indicate.

It is said that the court did not, in his instructions, submit to the jury the appellant's theory of the case,—that is, did not direct their attention to the fact that the appellant contended that he had never undertaken to treat the injured limb,—and the refusal to give a requested instruction to that effect is assigned as error. On this point the court instructed the jury that, in order for the respondent to recover, they must be satisfied by a preponderance of the evidence that the respondent's leg was in fact broken, and that the appellant, acting as a physician and surgeon, unskillfully and negligently treated the broken leg; and further on gave the following:

. "The court instructs you that the fact that a physician responds to a call for his professional services does not necessarily constitute an employment, unless some act is done or advice given by the physician which indicates an intention on his part to enter upon the employment. He may absolutely refuse this employment, if he sees fit. But when any act is done, or advice given, that may reasonably be construed into indicating an active entering upon the employment, then the liability of the physician attaches, and he may be held responsible for his negligence or lack of skill, as you are elsewhere herein instructed."

These instructions, we think, sufficiently covered the point.

At the hearing of a motion for a new trial, the trial

judge expressed his satisfaction with the verdict of the jury in all respects save upon the issue of the fractured bone. On this point he stated that his mind was in doubt, and that, before passing upon the motion, he intended to investigate the question further. Subsequently he overruled the motion, and his action is assigned as error. Counsel argue that, if the trial judge was in doubt from the evidence whether one of the substantial issues before the jury had been proven, it was his duty to grant a new trial at once, and that he had no right to look beyond the evidence for reasons to sustain the verdict. What investigation, if any, the trial judge made to satisfy his mind with reference to the justness of the verdict, the record does not disclose; but, if he overruled the motion while this doubt was still in his mind, it is not ground for reversal by an appellate court. Generally, where the record discloses that the trial court has expressed the opinion that the verdict is not sustained by the evidence, or is contrary to the weight of the evidence, and refuses to grant a new trial, the appellate court will reverse the judgment for an abuse of discretion (*Tacoma v. Tacoma Light & Water Co.,* 16 Wash. 288, 317, 47 Pac. 738, and cases cited); but it must appear that the trial judge had this opinion; it must appear that he believed that the verdict was clearly against the weight of the evidence. A mere doubt of the correctness of the verdict is not sufficient. Here the expression of the judge goes no further than to express a doubt upon this point, and in such a case it was his duty to uphold the verdict. *Kansas Pacific Ry. Co. v. Kunkel,* 17 Kan. 172. We have examined the entire record, and fail to find any substantial error.

The judgment is affirmed.

REAVIS, C. J., and DUNBAR and ANDERS, JJ., concur.