ÁNGEL MANUEL MENDOZA RIVERA, ETC., Plaintiff and Appellee, v. EMILIO RIVERA MANSO, Defendant and Appellant.

No. 11326.   Argued November 12, 1954.—Decided August 3, 1955.

*Santos P. Amadeo* and *Federico E. Virella* for appellant. *Armando A. Miranda* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

The Caguas Part of the Superior Court rendered judgment ordering the defendant to pay to plaintiff the sum of $2,000 as compensation for the physical damages which defendant caused to plaintiff upon striking him with a club, plus $50 to cover certain expenses, and ordering plaintiff to pay to defendant, who filed a counterclaim against him in representation of the conjugal partnership, the sum of $500 for damages suffered by defendant's wife whom plaintiff and counter-defendant slapped on the face. Defendant appealed from that part of the judgment which was adverse to him, assigning six errors in support of the appeal.

The first five assignments will be considered jointly since they actually raise the same question. Appellant contends that the lower court permitted a physician, over his objection, to testify as to one of the injuries sustained by plaintiff which were produced by defendant, as revealed by the X-ray photographs taken of plaintiff's skull and which were not offered in evidence.

The physician testified, briefly, that he examined the plaintiff and found several contusions and a wound in the left parietal region, it having been necessary to take X-ray photographs in the witness' presence. He saw and examined the plates, which revealed a "depressed fracture of the left parietal bone" which "coincided with the patient's wound," and that "the parietal bone" was "partially depressed." The physician's testimony as to the results of the X-rays was the only evidence which the lower court had before it to conclude

that plaintiff had suffered "a simple *depressed fracture*" of that bone.    (Italics ours.)

The general rule is that, where objection is made, an expert may not testify as to what is shown by an X-ray photograph unless it is offered in evidence, in order to give the adverse party the opportunity to cross-examine or to call experts to interpret it, if he so desires.    III Wigmore on *Evidence* 192, 3d ed.; *Patrick & Tellman* v. *Matkin*, 7 P.2d 414 (Okl.); *Gay* v. *United States*, 118 F.2d 160; *Elzig* v. *Bales*, 135 Ia. 208.    Expert testimony is admissible, however, as secondary evidence where showing is made that the photograph cannot be produced because it was lost or destroyed, or for some other proper reason.    *Patrick & Tellman* v. *Matkin, supra; American Nat. Ins. Co.* v. *Points*, 81 S.W.2d 762 (Tex.); *Vale* v. *Campbell*, 263 Pac. 400 (Ore.).

In the case at bar, the physician's testimony as to what the X-ray photographs showed was admitted without establishing any basis for receiving it as secondary evidence.

The witness testified that he had brought the photographs to court apparently as evidence in a criminal action against the appellant, that he left them in the prosecuting attorney's office, and did not see them any more.    Plaintiff's attorney merely stated that "since the photographs are not here because something has happened, it was all long before the filing of the complaint on April 4, 1950, and they should be considered as practically lost.    That evidence can be established by secondary evidence, as is done in the case of a lost promissory note," but plaintiff did not actually offer any evidence to show that after a reasonable search it was impossible to find them because they were lost.

Our opinion is that the trial court erred in permitting the witness to testify as to what was shown by the photographs, and that the error was prejudicial to appellant.    Although according to the findings of fact of the court defendant caused other injuries to plaintiff, it is evident that the fracture of the left parietal bone and the depression were also

taken into account in fixing and determining the amount of compensation, but we are unable to determine from the record to what degree.

In view of the foregoing conclusion, we need not consider the sixth assignment of error.

That part of the judgment from which defendant has appealed will be reversed and the case remanded to the lower court for a new trial only with respect to plaintiff's claim.