Argued and submitted February 23, reversed and remanded October 24, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDY RAY RICHARDSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
080632798; A143148

288 P3d 995

Lawrence Matasar argued the cause and filed the brief for appellant.

Shannon Terry Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment convicting him of aggravated theft in the first degree, ORS 164.057, and obtaining execution of a document by deception, ORS 165.102, raising a number of assignments of error. We write to address his first three assignments, in which he challenges the admission of statements by the victim of the theft that the court admitted under the state-of-mind exception to the hearsay rule, OEC 803(3).[1] Because we agree with defendant that the statements were not admissible under that exception—a resolution that obviates the need to address defendant's other assignments of error—we reverse and remand.

The victim of the theft was an elderly woman who owned her home but who had recently been admitted to a nursing home at the behest of members of her family. After her admission to the nursing home, she regularly expressed her displeasure about being there and said that she wanted someone to take her home.

Penn, who was the victim's great-nephew, arrived one day at the nursing home and offered to take the victim home. His offer came as a surprise to the victim's granddaughters, whom the victim had raised, because they had never met Penn and were uncertain, despite his statements to the contrary, that Penn and the victim had previously met.

After Penn began to take steps to have the victim discharged from the nursing home, he and defendant visited the victim. They had a nurse verify the victim's identity and, despite the nurse telling them that the victim should not sign documents because she was taking morphine, they had the victim execute a power of attorney and a quit claim deed to the victim's home in favor of Penn. Defendant had prepared both documents and claimed to represent the victim regarding the execution of them.

---

[1] OEC 803(3) provides that a statement is not excluded as hearsay if it is "of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed[.]"

Two days later, the victim was discharged from the nursing home with Penn. However, Penn returned to the nursing home with the victim the following day and had her readmitted. Once she returned to the nursing home, the victim was anxious and upset. She told several people that Penn and defendant had taken or were trying to take her home from her.

The victim and her family members sought to have the home returned to the victim, and, after the victim died, the home was returned to her estate as the result of litigation brought against Penn by the personal representative of the estate. Penn and defendant were subsequently indicted for aggravated theft and obtaining execution of documents by deception.

Before trial, defendant moved to exclude some of the state's exhibits, contending that a number of them contained inadmissible hearsay, and the court held a hearing on the motion. At the hearing, defendant objected to the admission of statements by the victim that were in the nursing home's records, including the statements "Please don't let them take my house," and "My nephew took my house and car from me."[2] Defendant also objected to the admission of an audio recording in which the victim's attorney asked the victim, "Did you want [Penn] to [put the home in his name]?" to which the victim responded, "No." Finally, defendant objected to witnesses testifying that the victim had said that she had been robbed or that her home had been taken from her.

In anticipation of the state's argument to the contrary, defendant specifically contended that the statements were not admissible under the state-of-mind exception to the hearsay rule, OEC 803(3). He characterized the victim's statements as her belief about events that had occurred in the past—*viz.*, her lack of assent to convey her home to Penn—which OEC 803(3) explicitly excludes from admission under the state-of-mind exception, and contrasted

---

[2] The nursing home records contain other statements by the victim. However, because defendant specifically identified those two statements in his objection, our analysis focuses on whether the court erred in admitting the two statements.

them with statements relating to a present state of mind or future intention, which are admissible under OEC 803(3).

The state responded that the victim's statements were admissible under OEC 803(3), explaining that it intended to use the statements to support its contention that the victim had not intended to convey her home to Penn and that the victim had not been mentally competent at the time that she signed the documents. The state contended that the statements that the victim made reflected how she felt at the time that she made them and indicated that transferring the home to Penn was not consistent with her intent and plan regarding her home.

The trial court concluded that the statements were admissible under OEC 803(3) and denied defendant's motion to exclude them. The court explained that defendant's defense would be that the victim had made a competent, intentional decision to convey her home to Penn and concluded that the challenged statements were admissible because they were statements establishing that the victim did not intend to do that and that she did not understand that she had taken that action.

Defendant appeals, contending that the trial court erred in denying his motion to exclude the victim's statements that were contained in the nursing home records and the audiotape. Defendant also contends that testimony by two nurses that the victim said, "They took my house," and "My nephew took my house," should have been excluded pursuant to defendant's pretrial motion. Defendant specifically contends that the victim's statements conveyed her beliefs and memories about whether she had intended to transfer her home to Penn and, consequently, that the statements were not admissible under the state-of-mind exception to the hearsay rule.

The state responds that the victim's statements constituted evidence of her state of mind at the time that she signed the quit claim deed and rebutted defendant's assertion that the victim was competent when she signed the documents. In essence, the state argues that the victim's statements were of her state of mind because they establish

that she did not intend to transfer her home to Penn and that she was not competent when she signed the documents.

OEC 803(3) provides that a statement is not excluded as hearsay if it is a "statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed[.]" The state-of-mind exception to the hearsay rule admits "statements of existing mental or emotional condition to prove the mental or emotional condition of the declarant *at the time the statements were made*[.]" Laird C. Kirkpatrick, *Oregon Evidence* § 803.3[3][a], at 731 (5th ed 2007) (emphasis added). Here, the state did not seek to admit the victim's statements to establish her mental condition at the time that she made the statements but, instead, to establish that she did not intend to convey her home to Penn or that she was not competent at the time that she signed the documents, both of which concerned her mental condition at a time preceding when she made the statements.[3]

Furthermore, OEC 803(3) specifically excludes statements "of memory or belief to prove the fact remembered or believed[.]" In each of the challenged statements, the victim is reflecting on a past event, *viz.*, her transfer of her home to Penn, and reaching the conclusion that Penn took her home contrary to her wishes. Thus, the statements relate her recollection of her intention in the past and her present conclusions, based on her reflection on the past, about a past event. We therefore conclude that the victim's

---

[3] At oral argument, the state contended that it offered the statements to establish that, at the time that the victim made the statements, she was confused and scared because she did not remember transferring her home to Penn, which would thereby constitute evidence that she was not mentally competent at the time that she signed the documents. The challenged statements assert that someone took the victim's home and that she did not want to convey her home to Penn. Nothing in those statements establishes that the victim did not remember signing the documents, nor is that a reasonable inference to draw from the statements. Furthermore, the statements do not establish present confusion but indicate, instead, that the victim had reflected on past events and reached the same conclusion that the state sought to prove at trial, *viz.*, that Penn, with defendant's assistance, had taken advantage of the victim by having her convey her home to Penn.

statements were not statements of her then existing state of mind but, instead, were statements of memory and belief. Consequently, they are not excepted by OEC 803(3) from the hearsay rule, and the trial court erred in admitting them.

The state contends that any error in admitting the statements was harmless because the statements were cumulative of other evidence that the state offered on the victim's competence and intent. It relies for that point on evidence that the victim was heavily medicated on morphine at the time that defendant and Penn had her sign the quit claim deed and evidence that she was forgetful and confused about where she was and who people were. It also contends that the victim's statements were cumulative of evidence that Penn had repeatedly lied about taking the victim's home and had obtained the home by making a false promise to return the victim to her home so that she could live there.

A trial court's error in admitting or excluding evidence is harmless—and we therefore must affirm the defendant's conviction despite the error—if there is little likelihood that the error affected the jury's verdict. OEC 103(1); *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the erroneously admitted evidence went to the heart of the state's case and is qualitatively different from other evidence that supported it. It consists of statements by the deceased victim explicitly stating the crux of the state's case, *viz.*, that defendant and Penn had taken her home from her without her agreement. Those statements are qualitatively different from evidence that the victim was medicated, that Penn had lied about taking the victim's home, and that Penn had obtained the home by making a false promise. The statements are not cumulative of other evidence and, given their nature, we cannot say that there is little likelihood that they affected the jury's verdict. *See, e.g.*, *State v. Morgan*, 251 Or App 99, 108-09, 284 P3d 496 (2012).

Reversed and remanded.